**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

THE INSURANCE HOUSE, INC.,  :
a Georgia corporation  :
   :  Civil Docket No.
      v.  :  1:08-mc-00094-SLR
   :
INSURANCE DATA PROCESSING, INC.,  :
a Pennsylvania corporation  :

**THIRD PARTY ACE AMERICAN INSURANCE COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DOCUMENTS**

      This case arises out of a contract dispute between The Insurance House, Inc. ("Insurance House") and Insurance Data Processing, Inc. ("IDP") that has been pending for several years in the United States District Court for the Northern District of Georgia ("the Georgia Court"). The dispute in the Georgia Court has <u>nothing</u> to do with Ace American Insurance Company ("Ace American"), which is <u>not a party</u> to the underlying case and has <u>no stake</u> in the matter.

      Despite this, Insurance House is trying to force Ace American – a former customer of IDP – to engage in a time-consuming and costly search for, and review of, a huge volume of records that were generated by a business group that has been defunct over several years. These records purportedly relate to highly-customized business software that was adapted by IDP for the unique and particular needs of Ace American.

      There is <u>no evidence</u> the product adapted by IDP for Ace American was the same product that was adapted separately by IDP for Insurance House. There is <u>no evidence</u> that Ace American provided information to Insurance House about the product in question, let alone inaccurate information. In these circumstances, there is simply <u>no basis</u> for dragging Ace American, a non-party to the Georgia litigation, through documentary discovery.

      The Third Circuit has made it very clear that "discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to

support it; the plaintiff must have some basis in fact for the action." *Zuk v. Eastern Pennsylvania Psychiatric Institute*, 103 F.3d 294, 299 (3d Cir. 1996). Discovery is not a tool for "find[ing] a cause of action." *Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (refusing to allow for discovery because the Court "would be permitting appellants to conduct a fishing expedition in order to find a cause of action").

In violation of the Third Circuit's mandate, Insurance House has embarked upon a classic fishing expedition. The Subpoena is based on sheer speculation that dealings between IDP and one customer (Ace American) might somehow suggest that IDP had mistreated a separate and unrelated customer (Insurance House). This should not be permitted, and Insurance House's Motion to Compel should be denied.

Insurance House argues that Ace American's objections to the Subpoena were not timely. This argument, however, completely ignores the fact that in-house counsel for Ace American <u>sought – and obtained – an extension of time</u> from Insurance House's counsel <u>before</u> the putative 'deadline' for production of documents. It also ignores the fact that an extension was <u>reiterated and confirmed</u> by an in-house paralegal for Ace American. Ace American specifically <u>reserved the right to make any and all objections</u>. Ace American served its objections within the agreed-upon time, and there has accordingly been no waiver here.

## FACTUAL BACKGROUND

Ace American, an insurance company, is one of several affiliated companies that are known generally in the industry as "ACE." In 2001, ACE established a business group called the Consumer Solution Group (also known as "CSG") for the purpose of developing and operating new lines of business such as collector car insurance, recreation vehicle insurance, motorcycle insurance, and manufactured housing insurance. *See* <u>Exhibit A</u> attached hereto (Affidavit of

2

Lucienne Hardy) ¶ 6 [hereinafter, "Hardy Aff."].    These lines of business have since been discontinued, and CSG has been disbanded. *Id.*

In 2002, IDP was selected as a vendor to provide a customized computer-based insurance policy-administration system for the proposed new lines of business. *See* Hardy Aff. ¶ 7.    IDP provided a basic framework for the system – based on its Acies/one product – and IDP was responsible for customizing the application.    *Id.* ¶ 8.    The relationship with IDP terminated sometime in December 2006. *Id.* ¶ 10.

On or about March 14, 2008, Ms. Lucienne Hardy, who presently works for ACE IT in Wilmington, Delaware, received a phone call from Mr. Charles Farrell, an IDP employee. *See* Hardy Aff. ¶ 11.    Ms. Hardy was formerly a member of the now-closed Consumer Services Group, and her former responsibilities included having some contact with IDP. *Id.* ¶¶ 5, 9.    Ms. Hardy previously had occasional contact with Mr. Farrell in connection with the IDP project. *Id.* ¶ 11.

In his recent phone call, Mr. Farrell told Ms. Hardy that IDP was being sued by one of its former clients; that the former client was going to issue a subpoena; that the subpoena could possibly be coming to her; and that she might receive something from IDP's lawyers *via* Federal Express that would provide her with "options" for dealing with the subpoena.    *See* Hardy Aff. ¶ 12.    Ms. Hardy told Mr. Farrell that she could not understand why the subpoena would be coming to her; that she had no knowledge about dealing with the subpoenas; and that any subpoenas she might receive would have to be turned over to ACE's legal department. *Id.* ¶ 13.

On or about March 19, 2008, Ms. Hardy received a Federal Express package containing a subpoena that was issued from this Court and that directed "Ace American Insurance Company (ACE INA)" to produce documents at the offices of Insurance House's counsel in Atlanta, Georgia on or before April 1, 2008 at 5:00 p.m. *See* Hardy Aff. ¶ 14; <u>Exhibit B</u> attached hereto

3

(Cover Letter and Subpoena).  The Subpoena purported to command Ace American to produce and permit inspection and copying of documents falling into twelve (12) broad categories pertaining to IDP and Acies/one product.  *See* Exh. B.  For example, the Subpoena sought internal documents relating to "representations" concerning ACIES/one; relating to "problems" with or "delays" in the "development" or "functionality" of ACIES/one; relating to "testing" performed with regard to ACIES/one; relating to "evaluations" of ACIES/one; relating to "criticism" of ACIES/one;  and/or relating to "meetings" on these or other subjects.  *Id.*

The cover letter attached to the Subpoena purported to confirm that "through counsel for Insurance Data Processing Inc., you [*i.e.*, Ms. Hardy] have agreed to accept service of this subpoena by Federal Express."  *See* Exhibit B.  In fact, prior to receiving the Subpoena, Ms. Hardy had <u>not</u> been contacted by counsel for IDP or, for that matter, by counsel for Insurance House.  *See* Hardy Aff. ¶ 16.  Moreover, Ms. Hardy had never agreed with anyone to accept service of the Subpoena or to accept service by Federal Express.  *Id.* ¶ 17.  Indeed, Ms. Hardy should never been sent a subpoena intended for Ace American in the first place.  Ms. Hardy is not a designated agent for service of process on Ace American, a custodian of records for the company, or an elected officer or director.[1]  *Id.* ¶¶ 4, 17.

Ms. Hardy, who now works in the information technology department, did not know how to handle the Subpoena and for this reason she forwarded the document to an in-house transactional attorney who works with ACE IT (Andrew Hopp, Esquire) rather than to ACE's in-house litigation attorneys who handle third-party subpoenas.  *See* Hardy Aff. ¶¶ 13, 15; Logan Aff. ¶¶ 4-6.  Mr. Hopp also had no familiarity with or responsibility for handling third-party subpoenas served on ACE companies.  *See* Logan Aff. ¶ 6.  In the latter half of March 2008, Mr.

---

[1] Ace American has a designated agent for service of process in the State of Delaware.  *See* Exhibit C attached hereto (Affidavit of Adrienne Logan) [hereinafter, "Logan Aff."] ¶ 3.

Hopp gave the Subpoena to Douglas A. Stuart, Esquire, another in-house transactional attorney who is also not responsible for handling subpoenas. *See* Exhibit D attached hereto (Affidavit of Douglas Stuart) [hereinafter, "Stuart Aff."] ¶¶ 4-5.

Because of the confusion created by Insurance House's 'service' of the Subpoena upon Ms. Hardy, the Subpoena did not come to the attention of the in-house litigation group in Philadelphia – which is responsible for handling third-party subpoenas – until March 31, 2008, the day before the compliance date designated in the Subpoena. *See* Logan Aff. ¶ 4.

On or about March 31, 2008, Mr. Stuart called Joseph F. Hession, Esquire, the attorney for Insurance House, Inc. and the issuing officer of the Subpoena. *See* Stuart Aff. ¶ 6. He left a message on his voicemail. *Id.* In his message, Mr. Stuart explained that he was an in-house attorney for the ACE companies, that the response date listed in his Subpoena was approaching, and that he wanted to talk to someone about it. *Id.* Mr. Hession returned his phone call later that same day and left a message on his voicemail. *Id.*

On or about April 1, 2008, Mr. Stuart spoke with Mr. Hession over the phone. *See* Stuart Aff. ¶ 7. Mr. Stuart advised Mr. Hession that he had just received the Subpoena, that he was not sure who would be handling the Subpoena, and that Ace American needed time to assign the matter to the appropriate person and for them to formulate a response. *Id.* He further advised Mr. Hession that Ace American could not respond to the Subpoena by the deadline stated therein, and he asked Mr. Hession for an extension of time to respond. *Id.* Mr. Hession responded that he did not oppose the request for extension of time. *Id.* Mr. Hession and Mr. Stuart did not discuss a specific date for Ace American's response. *Id.* Mr. Hession also did not state that Ace American was waiving potential objections. *Id.*

Importantly, Mr. Stuart further inquired whether Mr. Hession was up against any immediate discovery or trial deadlines in his case and he responded that he was not. *See* Stuart

{01017694;v1}

Aff. ¶ 7.  Mr. Stuart also asked whether Mr. Hession wanted him to confirm their agreement for an extension of time in writing, and Mr. Hession responded that it would not be necessary.  *Id.*

At about the time of his conversation with Mr. Hession, Mr. Stuart referred the Subpoena to Ms. Adrienne Logan, a paralegal for Ace American's in-house litigation attorneys in Philadelphia.  *See* Stuart Aff. ¶ 8; Logan Aff. ¶¶ 4, 7.   Ms. Logan subsequently requested a search for documents in response to the Subpoena.  *See* Logan Aff. ¶ 9.

On April 15, 2008, Ms. Logan called Mr. Hession.  *See* Logan Aff. ¶ 8.  He was not available, so she left a voicemail for him, and requested an extension of time to respond to the Subpoena.  *Id.*  By April 17, 2008, Ms. Logan received a call from Ms. Abbe Howard, Mr. Hession's paralegal, in response to her voice mail. *Id.* ¶ 9.  Ms. Logan advised Ms. Howard that although ACE had began searching for documents in response to the Subpoena, it was unclear whether ACE had any documents in its possession responsive to the Subpoena.  *Id.* Therefore, Ms. Logan requested an extension of time to prepare ACE's response to the Subpoena but advised Ms. Howard that she did not yet know what that response would be.  *Id.*  Ms. Howard agreed to an extension of time until April 24, 2008.  *Id.*  Ms. Howard did not state that Ace American was waiving any potential objections, and Ms. Logan did not make any such statement. *Id.*

On April 18, 2008, Ms. Logan faxed and mailed a letter to Mr. Hession, confirming her telephone conversation with Ms. Howard and the agreement for extension of time.  *See* Logan Aff. ¶ 10.  A copy of that letter is attached hereto as <u>Exhibit E</u>.  The letter specifically stated that "ACE does not waive any objections and expressly reserves the right to raise any applicable objections as to attorney-client privilege, work product privileges, reasonableness, over breadth, burdensome or because documents requested are of a confidential nature or contain proprietary business records, or to object for any other reasons allowed under the applicable rule of

6

procedure." *Id.*   Ms. Logan has never received any response to her letter.  *See* Logan Aff. ¶ 10.

On April 24, 2008, outside counsel for Ace American served objections to the Subpoena. Insurance House then filed this Motion to Compel.

## ARGUMENT

## I.    THE SUBPOENA WAS DEFECTIVE ON ITS FACE AND WAS NOT VALIDLY SERVED.

As an initial matter, the Subpoena should be quashed because it was defective on its face and was not validly served.

### A.    IN VIOLATION OF RULE 45(A)(2)(C), THE SUBPOENA DEMANDED PRODUCTION OF DOCUMENTS IN THE STATE OF GEORGIA.

The Subpoena was defective on its face because it was issued from this Court but demanded production of documents in the State of Georgia.    This was a clear violation of Federal Rule of Civil Procedure 45(a)(2)(C), which provides in pertinent part that a subpoena for the production or inspection of documents "must issue" from "the court for the district where the production or inspection is to be made."  *See* Fed. R. Civ. P. 45(a)(2)(C).

Here, the Subpoena did <u>not</u> issue from the district where the requested "production or inspection [was] to be made."  On the contrary, the Subpoena specifically purported to require a production of documents at the offices of Plaintiff's counsel <u>in Atlanta, Georgia</u>.  Accordingly, the Subpoena did not comply with the requirements of Rule 45(a)(2)(C) and must be quashed.

Numerous federal courts have held that a subpoena which commands production of documents in a different jurisdiction is invalid *per se* and cannot be enforced.   For example, the Court in *In re General Motors Corp. Dex-Cool Products Liab. Litig.*, 2007 WL 627459 at *1 (S.D. Ill. Feb. 27, 2007), held that a subpoena issued from the United States District Court for the Northern District of Ohio was clearly deficient on its face because it required production of documents in the State of Missouri.   Likewise, Insurance House's failure to comply with Rule

45(a)(C)(2) requires that the defective subpoena be quashed. *Accord Monsanto Co. v. Victory Wholesale Grocers*, 2008 WL 2066449 at *4 (E.D.N.Y. May 14, 2008) (subpoena issued in E.D.N.Y. was facially invalid because it required production in S.D.N.Y.), *Kansas City Southern Railway Co. v. Nichols Construction Corp.*, 2008 WL 199875 at *3 (E.D. La. Jan. 22, 2008) (quashing subpoena that was not issued from the court for the district where the production of the documents was to be had); *Jones v. Jackson State University*, 2007 WL 2670282 at *2 (C.D. Ill. Aug. 23, 2007) (subpoena that commanded production outside of the issuing district was facially invalid); *Spratt v. Leinster*, 2007 WL 1834035 at *1 (D. Colo. June 25, 2007) (trial court has no authority to enforce a subpoena that commands production of documents outside of the issuing district); *Falicia v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5, 11 (D.D.C. 2006) (D.D.C. lacked jurisdiction to issue a subpoena that required production of documents in State of Maryland); *Cincinnati Ins. Co. v. Cochran*, 2004 WL 5246993 at *3 (N.D. Fla. Dec. 9, 2004) (subpoena issued from N.D. Fla. was invalid because it purported to compel production of documents in State of Alabama).

Notwithstanding the clear mandate of Rule 45(a)(2)(C), Insurance House argues that the requested place of production is somehow irrelevant because Insurance House asked Ace to mail documents from the State of Delaware to the State of Georgia. However, Insurance House cites no authority for this remarkable proposition. Accordingly, this Court should reject Insurance House's position and hold that the Subpoena was defective on its face and therefore invalid and unenforceable *ab initio*.

**B.    THE SUBPOENA WAS SENT TO AN INDIVIDUAL WHO WAS NOT AUTHORIZED TO ACCEPT SERVICE ON BEHALF OF ACE AMERICAN.**

The Subpoena was also invalid because it was sent to an individual who was not authorized to accept service on behalf of Ace American. As noted above, the Subpoena was directed and sent to Ace American, purportedly in care of Ms. Lucienne Hardy. However, Ms.

8

Hardy is not an elected officer or director of Ace American, and she has no authority to accept service of process or other papers having legal consequences. *See* Hardy Aff. ¶¶ 4, 17. *See also* Logan Aff. ¶ 5. Ms. Hardy also is not a custodian of records. *Id.* Thus, service was improper and the Subpoena should be stricken. *See Cincinnati Ins. Co.*, 2004 WL 5246993 at *2 (denying motion to compel production of documents because there was nothing in the record to indicate "definitively" that individual named in subpoena "is an officer or director of the corporation or is otherwise authorized to accept service in its behalf").

## II.   ACE AMERICAN DID NOT WAIVE ITS OBJECTIONS TO THE SUBPOENA.

Insurance House argues that Ace American's objections to the Subpoena were somehow waived because they were not made within the time specified for compliance in the Subpoena, *i.e.*, April 1, 2008, and instead were served on April 24, 2008. This argument is baseless and should be rejected.

### A.   INSURANCE HOUSE AGREED THAT ACE AMERICAN COULD RESPOND TO THE SUBPOENA ON APRIL 24, 2008.

As explained above, Insurance House <u>specifically agreed</u> that Ace American could serve its response to the Subpoena on April 24, 2008. Ace American <u>confirmed this agreement in writing</u>, and at the same time <u>specifically reserved its right to make any and all objections</u> to the Subpoena. At no time did Insurance House dispute these confirmed terms of the parties' agreement. Accordingly, Ace American timely served its objections on April 24, 2008.

### B.   THERE ARE UNUSUAL CIRCUMSTANCES AND GOOD CAUSE FOR PERMITTING SERVICE OF THE OBJECTIONS AFTER APRIL 1, 2008.

Separate and apart from the agreement by Insurance House that Ace American could serve its objections on April 24, 2008, there are unusual circumstances and good cause for permitting Ace American to serve its objections beyond an earlier deadline.

9

Although Rule 45(c)(2)(B) provides that objections usually should be served before the earlier of the time specified for compliance or 14 days after the subpoena is served, "the district court may, 'in unusual circumstances and for good cause,' consider an untimely objection to the subpoena." *Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)). Numerous federal courts have held that good cause exists where some or all of a variety of circumstances are present, including but not limited to where (a) the subpoena is overbroad on its face and exceeds the bounds of discovery; (b) the subpoenaed witness is non-party acting in good faith; and (c) counsel for the witness was in contact with counsel for the party issuing a subpoena prior to filing formal objections. *See e.g., Yousuf*, 451 F.3d at 252 (no waiver where all three factors cited above were present); *American Standard, Inc. v. Humprey*, 2007 WL 1812506 at * 4 (M.D. Fla. June 22, 2007) (no waiver where subpoena was overbroad and non-party respondent acted in good faith); *Viking Yacht Co. v. Composites One LLC*, 2007 WL 869623 at * 2 (E.D. Tenn. March 21, 2007) (no wavier where subpoena was overbroad; requested production of documents in another state within 11 days; non-party acted in good faith; and counsel have been in contact concerning the non-party's compliance).[2]  In *Celanese Corp. v. E.I. duPont de Nemours & Co.*, 58 F.R.D. 606, 609-10 (D. Del. 1973), this Court also considered belatedly-raised objections where the volume of documents sought in the subpoena was great, the time given for production was brief, and counsel were negotiating the scope of production.

---

[2] *See also In re General Motors Corp. Dex-Cool Products Liab. Litig.*, 2007 WL 627459 at * 1 (S.D. Ill. Feb. 27, 2007) (unfair to find waver of objections under the circumstances); *In re Acutane Products Liability Litigation*, 2006 WL 1281598 at * 1 (M.D. Fla. May 9, 2006) (no waiver under the factors cited above); *Western Resources, Inc. v. Union Pacific Railroad Co.*, 2002 WL 1822425 at * 2 (D. Kan. July 23, 2002) (same); *American Electric Power Co. v. United States*, 191 F.R.D. 132, 136-37 (S.D. Ohio Dec. 17, 1999) (same); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51-52 (S.D.N.Y. 1996) (same); *Semtek International, Inc. v. Merkuriy, Ltd.*, 1996 WL 238538 at * 2 (N.D.N.Y. May 1, 1996) (same).

10

In the present case, there are clearly unusual circumstances and good cause for permitting Ace American to serve its objections on April 24, 2008.

As noted above, Ace American believed that it had an agreement with Insurance House that its response, including any objections, could be served on April 24, 2008. This agreement was underlined confirmed in writing by Ace American, and Insurance House did not dispute this written confirmation. In these circumstances, Ace American was amply justified in believing that it was permitted to serve its objections when it did.

There is no merit to Insurance House's suggestion that Ace American somehow misled Insurance House. Instead, only Insurance House has misrepresented and distorted the facts. For example, the Motion to Compel fails to mention that Mr. Stuart, an in-house transactional attorney, contacted Mr. Hession, counsel for Insurance House, *before* the time for compliance specified in the Subpoena. *See* Stuart Aff. ¶ 6. Further, Insurance House fails to mention that in the phone call with Mr. Stuart that took place on April 1, 2008 – the day specified for compliance in the Subpoena – Mr. Hession agreed to an *unspecified* extension of time for Ace to investigate the matter and formulate a response, and that Mr. Hession *did not* state that Ace American was waiving any potential objections to the Subpoena. *Id.* ¶ 7. Mr. Hession further advised counsel for Ace that it was not necessary to confirm this agreement in writing. *Id.*

Moreover, Adrienne Logan, Ace's in-house litigation paralegal, separately contacted Mr. Hession's office and requested more time for Ace to respond. *See* Logan Aff. ¶¶ 8-9. In a phone conversation with Mr. Hession's paralegal on April 17, 2008, Ms. Logan advised the paralegal that Ace American had began to investigate the matter, that the company needed extra time to prepare a response, and that she did not know what the response would be. *Id.* ¶ 9. Ms. Howard agreed to extension of time until April 24, 2008. *Id.* Ms. Howard did underlined not state that the extension was subject to any conditions or that Ace was waving its objections, and Ms. Logan

11

did not agree to any such matters. *Id.* Moreover, the confirmatory letter faxed by Ms. Logan to Mr. Hession the very next day, *i.e.*, on March 18, 2008, <u>specifically stated that Ace was not waiving any objections to the Subpoena</u>. *See* Exh. E. Counsel for Insurance House never disputed that assertion, which he easily could have done if he truly believed that it was not part of the parties' agreement. *See* Logan Aff. ¶ 10.

Based on the conversations recounted above, it was perfectly reasonable for Ace American to believe that the extensions of time to respond to the Subpoena included the right to object. Therefore, the objections were not waived. *See Rouson ex. rel. Estate of Rouson v. Eicoff*, 2006 WL 2927161 at * 4 (E.D.N.Y. Oct. 11, 2006) (no waiver where plaintiff agreed to extension to respond to subpoena and non-party reasonably believed that extension of time to respond included extension of time to object); *Concord*, 169 F.R.D. at 46, 52 (no waiver where in-house counsel obtained an extension of time to ascertain responsive documents to the subpoena).

Moreover, there can be no dispute that Ace American acted in good faith in dealing with the Subpoena. Upon receipt of the Subpoena, Ace American immediately began to address the matter, even though the Subpoena purported to require a response in less than two weeks. In any large corporate organization like ACE, it can take substantial time for a subpoena to go through the proper channels and to be directed to those who are responsible for responding to third-party subpoenas. In the present case, the problem was compounded by the fact that Insurance House had erroneously directed the Subpoena to Ms. Hardy at ACE IT in Delaware. The Subpoena eventually came to the attention of the litigation group within the legal department – which is responsible for handling responses to subpoenas – only one (1) day before the purported deadline of April 1, 2008. At that point, an investigation commenced and counsel for Insurance House was contacted immediately. Most of the delay in this sequence of events was caused by the fact

{01017694;v1}

that Insurance House had 'served' the Subpoena upon a person who did not regularly handle subpoenas and who was not authorized to accept the Subpoena.    Having caused the confusion that was a major factor in creating delay, Insurance House cannot now blame Ace American for a lapse of time between defective 'service' of the Subpoena and service of Ace American's objections.

Insurance House was not kept in the dark about these developments.    On the contrary, in-house counsel and a paralegal for Ace American were in contact with counsel for Insurance House within the stated time for compliance, and well before Ace filed objections to the Subpoena.    Ace American sought and received extensions of time.    At no time did anyone suggest that Ace American was waiving any objections.    Instead, Ace American explicitly preserved its right to assert any and all objections, and Insurance House did not at any time contradict this.

It is also important to note that Ace American is not a party to the underlying litigation and that Ace American has no interest in its outcome.    Non-party status is relevant, especially where the subpoena imposes undue expense and inconvenience on the responding non-party. *See, e.g., Concord*, 169 F.R.D. at 52.    Here, as more fully explained below, response to the subpoena would require Ace American to undertake a significant investigative and compliance effort. *See* Hardy Aff. ¶ 19.    In order to respond to the Subpoena, Ace American would need to search for all personal files, correspondence, and e-mails pertaining to various individuals who worked in at least five (5) different former CSG offices during a period of more than four years. *Id.* ¶ 20.    Most of these offices have already been closed, and the individuals in question have either left the company or have been reassigned. *Id.* ¶ 21.    Ace does not have a tracking or indexing system for their files. *Id.*    Thus, it would take an inordinate amount of time to locate files that might contain information responsive to the Subpoena. *Id.* ¶ 22.    Even if these files

13

could be located, a review for responsive documents will take many weeks. *Id.* ¶ 23. A search and review of e-mail correspondence of all individuals involved with the Acies/one application would also be extremely burdensome. *Id.* ¶ 24. In addition, all potentially responsive documents would need to be reviewed and redacted for privileged and confidential information. *Id.* ¶ 25. Ace American submits that these factors support the conclusion that there was no waiver here.

To make matters worse, the Subpoena was overbroad on its face. For example, the Subpoena seeks production of documents relating to "representations" concerning ACIES/one; "problems" with or "delays" in the "development" or "functionality" of ACIES/one; "testing" performed with regard to ACIES/one; "evaluations" of ACIES/one; "criticism" of ACIES/one; and/or "meetings" on these or other subject. These are extremely broad categories, especially considering that the responsive documents pertain to a software product that an entire business group (albeit one that is now defunct) used for a period of more than four (4) years.

To summarize, there was no waiver by Ace American, a non-party, of its right to serve objections to an overbroad subpoena that was misdirected in the first place.

## III.    THE SUBPOENA SHOULD OTHERWISE BE QUASHED AND THE MOTION TO COMPEL SHOULD BE DENIED.

The Court should also deny the Motion to Compel because the Subpoena subjects Ace American to undue burden and is otherwise objectionable.

Federal Rule of Civil Procedure 45 provides in pertinent part that "the issuing court must quash or modify the subpoena that subjects a person to undue burden." *See* Fed. R. Civ. P. 45(c)(3)(A)(iv). "Undue burden is determined by reference to factors such as relevance, the need of the party for the documents, the breadth of the documents request, the time period covered by it, the particularity with which documents are described and the burden imposed." *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D., 49, 51 (D.D.C. 2005) (internal

14

quotations omitted); *American Electric Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio Dec. 17, 1999) (same); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (same). "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *American Electric Power Co.,* 191 F.R.D. at 136.

Moreover, even if the information being sought is relevant, discovery is not allowed from a non-party "where no need is shown, or where compliance is unduly burdensome, or where potential harm caused by production outweighs the benefit." *Mannington Mills, Inc. v. Armstrong World Industries, Inc.,* 206 F.R.D. 525, 529 (D. Del. April 25, 2002) (citing *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1323 (Fed. Cir. 1990)); *accord North Carolina Right to Life, Inc.,* 231 F.R.D. at 51 ("limiting discovery is appropriate where the burden of providing documents outweighs the need for it.").

Here, a balancing of the relevant factors requires that this Court deny Insurance House's requested discovery. Insurance House has failed to show that the documents it seeks from Ace American are relevant to the underlying litigation or that Insurance House has any need for the documents. On the other hand, as explained in detail below, the burden of compliance with the Subpoena is extremely high. Since the burden of compliance far outweighs Insurance House's need for them, its Motion to Compel should be denied. Further, the requested production would be harmful to Ace American, in that it involves a substantial volume of privileged and confidential business information.

A.    **THE INFORMATION REQUESTED IN THE SUBPOENA HAS NO PROBATIVE VALUE IN THE UNDERLYING LITIGATION.**

It is well-settled that "if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by

15

definition undue." *Pacific Gas & Electric Co. v. Lynch*, 2002 WL 32812098 at *1 (N.D. Cal. Aug. 19, 2002) (internal quotations omitted).    "Relevancy, for the purposes of discovery is defined broadly, although it is not without 'ultimate and necessary boundaries.'" *Id., citing Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  For example, it is not permissible for a litigant seeking discovery from a non-party to "engage in merely speculative inquiries in the guise of relevant discovery." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990). "Once an objection to the relevance of the information sought is raised, the burden shifts to the party seeking the information to demonstrate that that the requests are relevant to the subject matter involved in the pending action." *Pacific Gas & Electric Co.*, 2002 WL 32812098 at *1 (internal quotations omitted).

In the present case, Insurance House has failed to carry its burden to demonstrate relevance of its discovery requests.  Insurance House argues vaguely that the underlying case involves issues of whether IDP made false representations to Insurance House regarding the capabilities of the "Acies/One" product and IDP's ability to "go live" by October 2005.  Based on this premise, Insurance House argues that the documents it is seeking from Ace American are somehow relevant to the IDP's "state of mind."  This makes no sense.

Ace American had nothing whatsoever to do with dealings between IDP and Insurance House.  On the contrary, Ace American retained IDP to deal with Ace American's own business activities.  These matters were unique to Ace American, and they were completely unrelated to Insurance House, which became involved with IDP at a different time concerning Insurance House's own unique issues.

Insurance House erroneously assumes that Ace American purchased the same product that Insurance House licensed from IDP.  In fact, Acies/one is not an 'off the shelf' product that one can buy at the local computer dealer or on the internet.   On the contrary, it is a highly-

16

customized product which is tailored to and integrated with the individual needs of the entity that is using it for its own business purposes. *See* Hardy Aff. ¶¶ 8, 25. Insurance House has not offered <u>any</u> evidence to show that the product customized by IDP for the now-defunct ACE Customer Service Group was the same product that was purchased by (and presumably customized for) Insurance House.

Even if a roughly similar product had been involved, it is still very difficult to see how the documents requested in the Subpoena could pertain at all to IDP's "knowledge" of the alleged falsity of representations made <u>to Insurance House</u>. For example, most of Insurance House's document requests seek, either explicitly or by implication, <u>internal Ace American documents</u> that were <u>generated by Ace American</u>. For example, Request No. 1 seeks *internal documents* reflecting demonstrations performed by IDP for Ace American. Similarly, Request No. 2 seeks *internal evaluations* of the Acies/one product by Ace American. Likewise, Request No. 3 demands Ace American's *internal notes* of meetings with IDP regarding representations made to Ace American concerning the capabilities of Acies/one). As another example, Request No. 11 seeks *internal correspondence and memoranda* containing criticisms of Acies/one by Ace American.

Such internal Ace American documents are all irrelevant to IDP's dealings with Insurance House, and with IDP's own 'knowledge.' In addition, to the extent that such documents might possibly reflect representations made by IDP to Ace American, such representations would relate only to adaptation of the product for Ace American. They would not reflect anything about the capability of IDP to customize or adapt a product for a <u>different</u> customer with <u>different</u> needs.

Documents relating to Ace American's own individual requirements and operational needs have no bearing upon any issue in the underlying case. Despite this, Insurance House has

17

served numerous requests that seek such things as schedules for performing user acceptance testing, documents containing descriptions of implementation methodologies, and documents containing test results. *See* Request Nos. 8-10.

To summarize, the discovery being sought by Insurance House has no bearing at all upon any issue in the underlying case. Insurance House has not demonstrated otherwise, and instead is trying to engage in exactly the kind of speculative 'fishing expedition' that the Third Circuit has prohibited.

**B.    THE SUBPOENA IS OVERBROAD AND VAGUE.**

The Subpoena is also unduly burdensome because it is overbroad and vague.    The Subpoena seeks production of documents contained in twelve (12) broad categories.    For example, the Subpoena seeks production of documents relating to "representations" concerning ACIES/one; "problems" with or "delays" in the "development" or "functionality" of ACIES/one; "testing" performed with regard to ACIES/one; "evaluations" of ACIES/one; "criticism" of ACIES/one;  and/or "meetings" on these or other subject.  These are extremely broad categories, especially considering that the responsive documents pertain to a customized software product that an entire business group used for a period of more than four (4) years.

The Subpoena is also vague.  By way of example and not of limitation, the Subpoena seeks production of various documents pertaining to "ACIES/one," "ACIES/one product," "ACIES/one module," "ACIES/one system," and "Process 360," yet these terms are not defined more narrowly anywhere in the Subpoena.    As explained above, there is no off-the-shelf software product known as "ACIES/one."    Rather, the term describes a product that is highly customized for individual users.   Under these circumstances, the terms used by Insurance House in its Subpoena are necessarily vague, and Ace American cannot possibly know what Insurance House means by them.

C.    THE SUBPOENA SEEKS CONFIDENTIAL AND PROPRIETARY INFORMATION.

In addition, the Subpoena is unduly burdensome because a substantial portion of the information being sought is confidential and proprietary business information that is intertwined within any responsive documents.  *See* Fed. R. Civ. P. 45(c)(3)(B)(i) (authorizing the court to quash or modify a subpoena requesting disclosures of confidential information).  *See* Hardy Aff. ¶¶ 23-25.

For example, the CSG group used highly-customized applications that involved significant input of its own highly confidential and proprietary information, including ACE policies and data regarding pricing and marketing, as well as personal and confidential data of the insureds.  *Id.* ¶ 25. Therefore, the responsive documents pertaining to these activities and processes, by their nature, would necessarily include a great deal of confidential and proprietary information.  Redactions of this confidential information would be extremely time consuming and would likely render many of the documents meaningless. *Id.*

In the Georgia Court, Insurance House specifically "acknowledge[d] that it is not entitled to the confidential business information of IDP or its customers." *See The Insurance House, Inc. v. Insurance Data Processing, Inc.*, C.A. No. 1:07-CV-0286-BBM, slip op. at 5 (N.D. Ga. Feb. 13, 2008) (attached hereto as Exhibit F).  Accordingly, Insurance House is not entitled to seek the very same confidential business information from Ace American in the present Subpoena.

In addition, the Georgia Court has already ruled that Defendant IDP "has established that its confidential business information is indeed confidential and that its disclosure might be harmful." *Id.*, slip op. at 7.   The same is true of the information being sought by Insurance House here.  Moreover, Insurance House is an insurance broker and agent, and its business interests are actually in competition with, inconsistent with, and/or adverse to those of Ace

{01017694;v1}

American.  Disclosure of Ace American's confidential and/or proprietary information to the Plaintiff would certainly be harmful to Ace American.

Ace American had no input in the 'protective order' that was entered in the Georgia Litigation, and it does not sufficiently protect Ace American's interests with respect to any privileged and/or confidential information requested in the Subpoena.[3]  *See Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 530-31 (D. Del. 2002) (protective order in the underlying case does not adequately protect the interests of a non-party); *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (same).  By way of example and not of limitation, the protective order contains numerous provisions that would permit the use and release of information that has been designated confidential.  Although the protective order purports to restrict access to confidential information (temporarily), it would potentially permit access to un-named "Qualified Persons" who should not be allowed such access.  Moreover, the protective order does not guarantee notice and an opportunity to be heard in the event that use or release of confidential information is proposed.  By way of another example, and not of limitation, Section 4 of the protective order contemplates that identities of actual and potential technical experts and consultants will be disclosed to the parties in the Georgia Litigation before they receive any documents designated "For Attorney's Eyes Only" and that the parties will have an opportunity to object.  The protective order, however, does not contemplate a similar disclosure to nonparties, such as Ace American, who produce documents designated "For Attorney's Eyes Only" in response to the subpoena.   Thus, the protective order does not adequately address the need for Ace American – a non-party with no stake in the underlying litigation – to protect its own confidential and proprietary business information.

---

[3] A copy of the "Protective Order" entered by the Georgia Court is attached to Insurance House's Subpoena. *See* Exh. B.

{01017694;v1}

In the end, "it would be divorced from reality to believe that [Insurance House] would serve as the champion of its competitor to maintain the confidentiality designation or limit the public disclosure during trial." *Mannington Mills, Inc.,* 206 F.R.D. at 530-31. "Moreover, courts have traditionally recognized that disclosure to a competitor is more harmful than disclosure to a non-competitor." *Id.* Therefore, substantial potential harm will emanate from disclosure of Ace American's confidential information to Insurance House. Insurance House has failed to show that any purported benefit of disclosure outweighs the potential harm in this case. Accordingly, its Motion to Compel must be denied.

### D.    COMPLIANCE WITH THE SUBPOENA WILL BE TIME-CONSUMING AND EXPENSIVE.

In addition, compliance with the Subpoena will be extraordinarily burdensome, as it would involve a significant investigation and review time, as well as enormous commitment of resources.

In order to respond to the Subpoena, Ace American would be required, at the very least, to track and review all personal files, correspondence, and e-mails pertaining to various individuals who worked in at least five (5) different former CSG group offices during a period of more than four (4) years. *See* Hardy Aff. ¶ 20.

All of the former CSG offices except for one have been closed. The individuals previously assigned to the CSG group have either left ACE's employment or have been re-assigned within the ACE companies to other offices. Some of their files have been turned over to other individuals, sent to storage, or discarded in the normal course of business. ACE does not have a tracking or indexing system for these files. *See* Hardy Aff. ¶ 21.

It is difficult to estimate whether it would take weeks or months to search for or locate potentially responsive files. *Id.* ¶ 23. However, even if they could be located, it would be extremely burdensome and time-consuming to review them for responsive information. For

{01017694;v1}

example, Ms. Hardy estimates that would take her approximately three (3) weeks, working exclusively on this project, to review her own files for responsive documents. She estimates that it would take a comparable amount of time to review each personal file for other individuals who were once involved with the Acies/one application and the now defunct CSG group. *Id.*

In addition to locating and reviewing paper files, the compliance effort would require a search for and review of the e-mails of all individuals who were involved with this project. *See* Hardy's Aff. ¶ 24. Such a search for e-mail correspondence, particularly e-mail correspondence of individuals who no longer work for ACE, would be burdensome to the extreme. *Id.*

## IV.  THE SUBPOENA DOES NOT ALLOW A REASONABLE TIME FOR COMPLIANCE.

The Court should also deny the Motion to Compel because the Subpoena and Insurance House did not allow reasonable time for compliance. *See* Fed. R. Civ. P. 45(c)(3)(A)(i) ("the issuing court must quash or modify a subpoena that fails to allow a reasonable time to comply").

The attached affidavit of Lucienne Hardy makes clear that the compliance effort would take significantly more time than allowed by Insurance House. Presently, it is not even possible to estimate whether it would take weeks or months to locate the personal files that might contain responsive information. *See* Hardy Aff. ¶ 23. Ms. Hardy estimates that it would take her as much as three (3) working exclusively on this project, to review her own files for responsive documents and comparable amount of time to review other files that could be located. *Id.*

The case cited by Insurance House is not to the contrary. In *Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enterprises, Inc.*, 160 F.R.D. 70 (E.D. Pa. 1995), the Court held that 37 days was sufficient amount of time for a subcontractor to produce business records, contracts, payroll records, and tax forms pertaining to work received from the principal contractor. The subpoena was limited to events that occurred during a narrow, 20-month period. *Id.* at 74. The decision in that case is clearly limited to its facts and there is

22

nothing in the court's opinion suggesting that 37 days is, as a matter of law, sufficient time to respond to subpoenas in other cases. It is obvious that the nature of documents being sought here, the time frame which they cover (more than 4 years), and the fact that the business unit is defunct are all materially different circumstances.

## V.  EVEN IF THE SUBPOENA IS ENFORCEABLE, INSURANCE HOUSE MUST COMPENSATE ACE FOR ALL EXPENSES.

In the event that the Court should order Ace American to comply with some part of the Subpoena, it "must protect [Ace] from significant expense resulting from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii). *See also Pacific Gas and Electric Co. v. Lynch*, 2002 WL 32812098, *3 (N.D. Cal. Aug. 19, 2002) ("courts are required to condition compelled production by a non-party on the payment of at least some portion of costs of production by the serving party"); *In re Petition of First Am. Corp.*, 184 F.R.D. 234, 240 (S.D.N.Y. 1998) (same). Such expenses include all personnel time spent on locating, reviewing, redacting, and producing documents, as well as all associated costs. *See Pacific Gas and Electric Co.*, 2002 WL 32812098 at *3 (where cost of compliance with subpoena exceeds well beyond the costs of copying and shipping, the requesting party should bear the cost of labor and legal work to facilitate compliance); *see also Guy Chemical Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007) (awarding non-party the cost of production where a requesting party failed to show that the cost of production was *de minimus*). The required compensation for expenses also includes Ace American's attorney's fees. *See, e.g., Angell v. Kelly*, 234 F.R.D. 135, 138 (M.D.N.C. 2006) (court clearly has the authority to grant attorney's fees not only with respect to processing the documents pursuant to Rule 45, but also for litigating the motion to compel under Rule 37); *Pacific Gas and Electric Co.*, 2002 WL 32812098 at * 3 (legal work done to facilitate compliance may be considered a cost of compliance reimbursable under Rule 45); *In re Petition of First American*

*Corp.*, 184 F.R.D. at 241 (same); *Williams v. City of Dallas*, 178 F.R.D. 103, 113-14 (N.D. Tex. 1998) (court could award attorney's fees and expenses for compliance with subpoena).

In the present case, such an award is warranted. As explained above, the scope of the document requests in the Subpoena is broad, the requests are extremely invasive, and they would require Ace American to produce internal documents to a competitor. The actual costs of production would be prohibitive as Ace American would be required to undertake a significant investigative and compliance effort. Ace American would, where possible, need to separate privileged matters from non-privileged matters.

Moreover, Ace American is a non-party to the underlying litigation and has no interest, financial or otherwise, in its outcome. "[S]imply put, it not [Ace American's] lawsuit and [it] should not have to pay for the costs associated with someone else's dispute." *Guy Chemical Co.*, 243 F.R.D. at 313. "Not only is it fundamentally unfair for non-parties to bear the significant litigation cost of others, but also if this Court were to allow litigating parties like [Insurance House] to impose such a burden on non-parties, then the likelihood of cooperation by non-parties in the future would be placed in jeopardy." *Id.* The underlying litigation has no public significance. Moreover, Insurance House, which touts itself as "a leading regional managing general agency and broker," has not shown that it lacks the necessary resources to compensate Ace American for the production efforts in seeks in its underlying litigation against IDP.[4]

For all of these reasons, Ace American is entitled to recover all expenses. *See, e.g., Tessera, Inc. v. Micron Technology, Inc.*, 2006 WL 733498 at *10 (N.D. Cal. March 22, 2006); *In re Petition of First American Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998). *See also Standard Chlorine of Delaware, Inc.*, 821 F. Supp. 232, 265-66 (D. Del. 1992) (under previous version of

---

[4] Insurance House admits that it "has been profitable each year since its inception in 1964, and closed 2004 with $100.6 million in consolidated premium writings." See http://www.insurancehouse.com/Company/History.aspx.

{01017694;v1}

rule, "the non-party bank [was] entitled to reimbursement of <u>all</u> reasonable charges incurred in both producing and copying [the responsive] documents") (emphasis added).

## <u>CONCLUSION</u>

The Subpoena served by Plaintiff upon Ace American Insurance Company is invalid, and the objections of Ace American to the subpoena should be sustained.    Ace American hereby requests oral argument if the Court deems it appropriate.

BAYARD, P.A.

Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware  19899
Tel:  (302) 655-5000

-and-

Paul B. Bech
Michael A. Shapiro
BAZELON LESS & FELDMAN, P.C.
1515 Market Street - Suite 700
Philadelphia, PA 19102-1907
Tel:  (215) 569-1155

Counsel for Ace American Insurance Company

DATED: June 3, 2008

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE INSURANCE HOUSE, INC.,    :
a Georgia corporation    :    1:08-mc-00094-SLR
    :
    v.    :    Northern District of Georgia
    :    Case No. 1:07-cv-0286-BBM
INSURANCE DATA PROCESSING, INC.,    :
A Pennsylvania corporation    :

**AFFIDAVIT OF LUCIENNE N. HARDY**

Lucienne N. Hardy deposes and states as follows:

1.    I am employed by ACE American Insurance Company ("Ace American"), one of the ACE companies ("ACE") and work in the IT (information technology) department ("ACE IT").

2.    My business address is One Beaver Valley Road – 3 West, Wilmington, Delaware 19803.

3.    Within ACE IT, I am responsible for managing various IT development and maintenance projects for ACE companies.

4.    I am not an elected or appointed officer or director of Ace American, nor a custodian of records. I am not authorized to receive service of process on behalf of Ace American.

5.    Between 2002 and 2006, I was part of the now-dissolved Consumer Solutions Group (CSG) business group within ACE.

6.    The CSG business group was established in 2001 to build and develop new lines of personal insurance business for ACE, such as collector car insurance,

recreation vehicle insurance, motorcycle insurance, and manufactured housing insurance. These lines of business have since been discontinued and the group has been disbanded.

7.      Insurance Data Processing, Inc. ("IDP"), the defendant in the above-referenced matter, was a vendor selected in 2002 to customize a policy administration system for these new lines of business.

8.      IDP provided a basic framework for the system – Acies/one – and was responsible for customizing the application.

9.      My responsibilities at the CSG group included being a contact person for IDP.

10.     The contract with IDP ended sometime in December of 2006.

11.     On or about March 14, 2008, I received a phone call from Mr. Charles Farrell, an employee at IDP, with whom I had had occasional contact in connection with the IDP project.

12.     In his phone call, Mr. Farrell told me that IDP was being sued by one of its former clients; that the former client might issue a subpoena; that the subpoena could possibly be coming to me; and that I might receive something from IDP's lawyers via Federal Express that would provide me with "options" for dealing with the subpoena.

13.     I told Mr. Farrell that I could not understand why a subpoena would be coming to me; that I had no knowledge about dealing with the subpoenas; and that any subpoenas I might receive would have to be turned over to ACE's legal department. At the time, I had no idea who in the ACE's legal department would handle a subpoena.

14.     On or about March 19, 2008, I received a Federal Express package containing a subpoena from Insurance House, Inc. ("Insurance House"). The subpoena

2

was issued by the United States District Court for the District of Delaware and was directed to "Ace American Insurance Company (ACE INA)" (the "Subpoena").

15.    The next day, I forwarded the Subpoena to Andrew Hopp, Esquire, an in-house lawyer for ACE who provides legal advice to ACE IT.  Mr. Hopp works in Philadelphia, PA.

16.    Prior to receiving the Subpoena, I had not been contacted by counsel for either Insurance House or IDP.

17.    I have never agreed to accept service of the Subpoena or to accept service of the Subpoena by Federal Express.  I am not and have not represented to anyone that I am an officer or director of Ace American; that I am a custodian of records for Ace American, or that I am authorized to accept service of the Subpoena on behalf of Ace American.

18.    I have reviewed the document requests contained in the Subpoena pertaining to the Acies/one application.

19.    Compliance with the Subpoena would involve a significant investigative and compliance effort on behalf of ACE American.

20.    In order to respond to the Subpoena, Ace American would be required, at the very least, to track and review all personal files, correspondence, and e-mails pertaining to various individuals who worked in at least five (5) different former CSG group offices  during a period of more than four (4) years.

21.    All of the former CSG offices except for one have been closed.   The individuals previously assigned to the CSG group have either left ACE's employment or have been re-assigned within the ACE companies to other offices.   Some of their files

3

have been turned over to other individuals, sent to storage, or discarded in the normal course of business. ACE does not have a tracking or indexing system for these files.

22.    While an effort to locate these files began upon receipt of the Subpoena, it would take an inordinate amount of time to locate files that might contain information responsive to the subpoena.

23.    It is difficult to estimate whether it would take weeks or months to search for or locate potentially responsive files.    However, even if they could be located, it would be extremely burdensome and time-consuming to review them for responsive information. For example, I estimate that would take me approximately three (3) weeks, working exclusively on this project, to review my own files for responsive documents. I estimate that it would take a comparable amount of time to review each personal file for other individuals who were once involved with the Acies/one application and the now defunct CSG group.

24.    In addition to locating and reviewing paper files, the compliance effort would require a search for and review of the e-mails of all individuals who were involved with this project.    Such a search for e-mail correspondence, particularly e-mail correspondence of individuals who no longer work for ACE, would be burdensome to the extreme.

25.    Moreover, a substantial portion of the information sought by the Subpoena is confidential and proprietary information belonging to ACE, and is intertwined within any otherwise responsive documents. For example, the CSG group used highly-customized applications that involved significant input of its own highly confidential and proprietary information, including ACE policies and data regarding

4

pricing and marketing, as well as personal and confidential data of the insureds. Therefore, the responsive documents pertaining to these activities and processes, by their nature, would necessarily include a great deal of confidential and proprietary information. Redactions of this confidential information would be extremely time consuming and would likely render many of the documents meaningless.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Lucienne N. Hardy

**EXHIBIT "B"**

MIAMI
ORLANDO
ST. PETERSBURG
TALLAHASSEE
TAMPA
WEST PALM BEACH

# CARLTON FIELDS

ATTORNEYS AT LAW

One Atlantic Center
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309-3455

Joseph F. Hession
Shareholder
404.815.2706 direct
jhession@carltonfields.com

404.815.3400
404.815.3415 fax
www.carltonfields.com

March 18, 2008

Lucienne N. Hardy
Assistant Vice President, ACE IT
**ACE American Insurance Company
(ACE INA)**
One Beaver Valley Road – 3 West
Wilmington, DE 19803

**VIA FEDERAL EXPRESS**

Re:    The Insurance House, Inc. v. Insurance Data Processing, Inc.
       United States District Court for the Northern District of Georgia
       Civil Action No. 1:07-CV-0286-BBM.

Dear Sir:

We have reason to believe that you have documents relevant to the above-referenced litigation. Enclosed, please find a subpoena for certain categories of those documents. This will confirm that, through counsel for Insurance Data Processing, Inc., you have agreed to accept service of this subpoena by Federal Express. If this is incorrect, please let us know immediately.

The court has entered a protective order in this case, a copy of which I attach hereto, and I encourage you to designate all produced documents either "Confidential" or "Attorneys' Eyes Only" to ensure that they are kept appropriately confidential. Additionally, we are willing to pay all costs associated with copying and shipping documents responsive to this subpoena.

Please contact me directly if you have any questions concerning this subpoena.

Sincerely,

Joseph F. Hession

Enclosures
cc:    Carl G. Roberts, Esq.
       Damian L. DiNicola, Esq.
       James Wolfson, Esq.
       Philip Bubb, Esq.

12783394.1

# UNITED STATES DISTRICT COURT
## District of Delaware

THE INSURANCE HOUSE, INC.,
a Georgia corporation,

V.

**SUBPOENA IN A CIVIL CASE**

INSURANCE DATA PROCESSING, INC.,
a Pennsylvania corporation,

CASE NUMBER:[1]    **1:07-CV-0286-BBM**

TO:    ACE American Insurance Company (ACE INA)
       Lucienne N. Hardy
       Assistant Vice President, ACE IT
       One Beaver Valley Road – 3 West
       Wilmington, DE  19803

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects): **See Exhibit A, attached.**

| PLACE | Carton Fields, P.A., One Atlantic Center, 1201 West Peachtree St., Suite 3000, Atlanta, Georgia 30309 | DATE AND TIME On or before April 1, 2008 at 5:00 PM |
| --- | --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| Attorney for Plaintiff | 3-18-08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Joseph F. Hession, Carlton Fields, P.A., 1201 W. Peachtree St., NW, Atlanta, Ga 30309, 404-815-3400

(See Rule 45, Federal Rules of Civil Procedure Parts C&D on reverse)

---

[1] If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED ON (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    Date

_____
Signature of Server

_____
Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earning and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not party or an officer of a party to travel to a place more than 100 miles from the place where that person

resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) if a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things, not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT A

### I.    DEFINITIONS

The following definitions apply to this subpoena:

1.    The words "you" or "your" shall mean the recipient of this Subpoena, including all parents, subsidiaries, affiliates, agents, and employees thereof.

2.    "Insurance House" shall mean the plaintiff The Insurance House, Inc., including all parents, subsidiaries, affiliates, agents, and employees thereof.

3.    "IDP" shall mean the defendant Insurance Data Processing, Inc., including all parents, subsidiaries, affiliates, agents, and employees thereof.

4.    The word "communication" shall mean any oral statement, dialogue, colloquy, discussion, correspondence, or conversation, and any other means used to transfer thoughts or ideas between persons.

5.    The words "document" or "documents" shall mean the original (or, if the original is not available, then a copy) and each copy or draft of all written, printed, typed, reported, recorded, or graphic matter, and all photographic matters or sound reproduction tapes, records, or other data compilations from which information can be obtained and translated through detection devices into reasonably usable form, if necessary, however produced or reproduced, now or formerly within your actual or constructive possession, custody or control or of which you have knowledge. "Document" or "documents" shall include, but are not limited to, all correspondence, telegrams, telexes, cables, telephone records, memoranda, memoranda of telephone conversations or meetings, reports, tests, samples, studies, compilations of data, electronic mail, voice mail, computer disks, CD's (compact disks), hardware or software, filings, records, charts, lists, analyses, graphs, diagrams, drawings tables, schedules, cost estimates,

12788028.1

worksheets, books, manuals, expenses, reports, notebooks, diaries, calendars, books of account, ledgers, journals and other financial records, audits, profit and loss statements, financial statements, annual reports, state and federal tax returns, checkbooks, canceled checks, personnel files, payroll records, billings, invoices or statements, price lists, price quotations, credit memoranda, purchase orders, receipts, all press releases, photographs, newspaper clippings, hand bills or written advertisements, all contracts or agreements, and any drafts, copies, blind or carbon copies or reproductions of the foregoing, and any intracorporate drafts of the foregoing upon which notations in writing have been made which do not appear on the originals. Without limitation of the term "control" as used in the preceding sentences, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person or public or private entity having actual physical possession thereof. If any document requested was previously, but is no longer in your possession or subject to your control as defined herein, state what disposition was made of it, and the date or dates, or approximate date or dates, on which such disposition was made.

6.      The word "produce" means to make available the documents requested herein for inspection and copying and to separate such documents into categories set forth in this request; if you decline to produce any documents requested hereinafter on the basis of any asserted privilege, at the time of production you shall provide counsel for plaintiffs with the following written information pertaining to such document:

(i)      its date or, if not dated, the date it was prepared or received;

(ii)     the type of document (e.g. letter, memorandum, telegraph, photograph, reproduction);

(iii)    the author and addressee;

12788028.1

(iv)    its present location;

(v)    the identity of the individual or person who is the present custodian or custodians

thereof;

(vi)    a general description of its contents;

(vii)    the identity of each person who received a copy of such document and the

relationship of such person to you;

(viii)    whether such document contains or relates to facts or opinions, or both; and,

(ix)    the nature of the privilege (e.g., work product, attorney-client, etc.) that you claim

with respect to such documents.

7.    The words "relate to" or "relating to" shall mean referring to, alluding to,

responding to, relating to, connected with, commenting on, in respect of, about, regarding,

discussing, summarizing, showing, describing, reflecting, analyzing, constituting, or in any way

relevant to the specified subject.

8.    The term "correspondence" shall include both written and electronic (e-mail)

communications.


## II.    CATEGORIES OF DOCUMENTS TO BE PRODUCED

1.    Any internal documents reflecting demonstrations performed by IDP of its

"ACIES/one" product.

2.    Any evaluations of any "ACIES/one" module or the entire "ACIES/one" system.

3.    Any notes of any meetings between you and IDP regarding IDP's representations

concerning the capabilities of ACIES/one.


12788028.1

4.      Any notes of any meetings between you and IDP regarding delays in or problems with the development of ACIES/one for You.

5.      Any notes of any meetings between you and IDP regarding problems with the functionality of ACIES/one.

6.      Any notes of any meetings between you and IDP regarding results of any testing performed on ACIES/one.

7.      Any documents containing schedules or deadlines for placing any "ACIES/one" module or the entire "ACIES/one" system in a production environment.

8.      Any documents containing schedules for performing user acceptance testing on any "ACIES/one" module or the entire "ACIES/one" system.

9.      Any documents containing descriptions of IDP's "Process 360" implementation methodology.

10.      Any documents containing the results from testing of any "ACIES/one" module or the entire "ACIES/one" system.

11.      Any internal Correspondence or memoranda identifying any criticism of or problems with the development or functionality of ACIES/one.

12.      Any Correspondence with IDP identifying any criticism of or problems with the development or functionality of ACIES/one.

## CERTIFICATE OF SERVICE

I certify that I have caused a copy of the foregoing document to be served on opposing

counsel by United States mail with adequate postage affixed and addressed as follows:

John M. Bowler
Michael D. Hobbs, Jr.
Alison A. Grounds
TROUTMAN SANDERS LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216

Carl G. Roberts
Damian L. DiNicola
BALLARD SPAHR ANDREWS & INGERSOLL LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103-7599

Respectfully submitted this 18th day of March, 2008.

CARLTON FIELDS, P.A.
1201 West Peachtree Street
Suite 3000
Atlanta, Georgia 30308
Telephone: (404) 815-3400
Facsimile: (404) 815-3415

Joseph P. Hession
Georgia Bar No. 349605

*Attorney for Plaintiff*

10037536.1
12782548.1

1

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 05 2007

JAMES N. HATTEN, Clerk
Paul M. [signature]
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

THE INSURANCE HOUSE, INC.,
a Georgia corporation,

    Plaintiff,

vs.

INSURANCE DATA
PROCESSING, INC.,
a Pennsylvania corporation,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.
1:07-CV-0286-BBM

## PROTECTIVE ORDER

This 5th day of February, 2007, upon the consent of the parties, and pursuant

to Rule 26(c) of the Federal Rules of Civil Procedure,

It is hereby ORDERED that:

1.    All Classified Information produced or exchanged in the course of this

litigation by parties or by nonparties, whether produced under subpoena, in

response to a Rule 34 request, or otherwise, shall be used solely for the purpose of

- 1 -

ATLA:30942.1

preparation and trial of this litigation and for no other purpose whatsoever, and shall not be disclosed to any person except in accordance with the terms hereof.

2.     "Classified Information," as used herein, means any information of any type, kind, or character which is designated as "Confidential" or "Attorneys' Eyes Only" by any of the supplying or receiving parties or nonparties, whether produced under subpoena or otherwise, and whether it be a contract or other type of document, information contained in a contract or other type of document, information revealed during a deposition, information revealed in an interrogatory answer or in other discovery, or information obtained by any other means related to this litigation.  In designating information as "Confidential" or "Attorneys' Eyes Only", a party will make such designation only as to that information that it in good faith believes contains Classified Information.  Information or material which is available to the public, including catalogues, advertising materials, and the like shall not be classified.

3.     "Qualified Persons," as used herein means:

a.     Attorneys of record for the parties in this litigation, employees of such attorneys to whom it is necessary that the material be shown for purposes of this litigation, and outside vendors retained in good faith by such attorneys for the purposes of litigation support, including processing electronic information and providing copying services;

b.     Actual or potential independent technical experts or consultants, who have been designated in writing by

- 2 -

notice to all counsel prior to any disclosure of Classified Information to such persons, who have signed a document agreeing to be bound by the terms of this protective order (such signed document to be filed with the Clerk of this Court by the attorney retaining such person), and who does not provide services of a similar nature to or in competition with the party whose Classified Information will be reviewed;

c.   The parties; and

d.   If this Court so elects, any other person may be designated as a Qualified Person by order of this Court, after notice and hearing to all parties.

4.   All Qualified Persons defined in Paragraphs 3(b) receiving any Classified Information pursuant to this Order shall sign an undertaking in the form annexed hereto as Attachment A; it being further provided that, with the exception of the experts or consultants for the Preliminary Injunction Hearing, the other party shall have five business days after disclosure of the identity of such Qualified Person in which to object on a good faith basis to the designation of such Qualified Person before she or he receives any Attorneys' Eyes Only Classified Information. If such an objection is lodged, the Qualified Person with respect to whom the objection is lodged shall not receive any Classified Information until after the objection is resolved.

5.   Documents produced in this action may be designated by any party or nonparties as Classified Information by marking each page of the document(s) so designated with a stamp stating "Confidential" or "Attorneys' Eyes Only"; or, if

ATL\0309412.1

the information is electronically stored information, by so designating on the

physical media used to deliver the electronically stored information (if applicable)

and in written or electronic correspondence.  In lieu of marking the original of a

document, if the original is not produced, the designating party may mark copies of

Classified Information that are produced or exchanged.  Originals shall be

preserved for inspection.

      6.     Information disclosed at (a) the deposition of a party or one of its

present or former officers, directors, employees, agents, or independent experts

retained by counsel for the purpose of this litigation, or (b) the deposition of a third

party (which information pertains to a party) may be designated by any party as

"Confidential" or "Attorneys' Eyes Only" by indicating on the record at the

deposition that the testimony is "Confidential" or "Attorneys' Eyes Only" and is

subject to the provisions of this Order.

      7.     Any party may also designate information disclosed at such

deposition as "Confidential" or "Attorneys' Eyes Only" by notifying all of the

parties in writing within thirty (30) days of receipt of the transcript, of the specific

pages and lines of the transcript which should be treated as "Confidential" or

"Attorneys' Eyes Only".  Each party shall attach a copy of such written notice or

notices to the face of the transcript and each copy thereof in his possession.

ATL #309421

- 4 -

custody or control. All deposition transcripts shall be treated as Classified Information for a period of thirty (30) days after the receipt of the transcript.

8.     To the extent possible, the court reporter shall segregate into separate transcripts information designated as "Confidential" or "Attorneys' Eyes Only" with blank, consecutively-numbered pages being provided in a nondesignated main transcript. The separate transcript containing Classified Information shall have page numbers that correspond to the blank pages in the main transcript. The parties may by mutual agreement designate an alternate way to handle such designations within specific deposition transcripts.

9.     Classified Information designated as "Confidential" shall not be disclosed or made available by the receiving party to persons other than Qualified Persons defined in Paragraphs 3(a)-(d) above.

10.    Classified Information designated as "Attorneys' Eyes Only" shall be restricted in circulation to Qualified Persons described in Paragraphs 3(a)-(b) above.  Copies of "Attorneys' Eyes Only" information provided to a receiving party shall be maintained in the offices of outside counsel for Plaintiff(s) and Defendant(s).  Any documents produced in this litigation, regardless of classification, which are provided to Qualified Persons of Paragraph 3(b) above, shall be maintained by such Qualified Persons only at the office of such Qualified Person and only working copies shall be made of any such documents. Copies of

ATL/630942.1                                    - 5 -

documents produced under this Protective Order may be made or exhibits prepared by independent copy services, printers or illustrators for the purpose of this litigation.

11.    Each party's outside counsel shall maintain a log of all copies of "Attorneys' Eyes Only" documents that are delivered to any one or more Qualified Person defined in Paragraph 3, above.

12.    Documents previously produced shall be retroactively designated by notice in writing of the designated class of each document by Bates number within thirty (30) days of the entry of this order.  Documents unintentionally produced without designation as "Confidential" or "Attorneys' Eyes Only" may be retroactively designated in the same manner and shall be treated appropriately from the date written notice of the designation is provided to the receiving party. Documents to be inspected shall be treated as "Attorneys' Eyes Only" during inspection.  At the time of copying for the receiving parties, such inspected documents shall be stamped prominently "Confidential" or "Attorneys' Eyes Only" by the producing party, or, if the information is electronically stored information, on the physical media used to deliver the electronically stored information (if applicable) and in written or electronic correspondence associated or provided with the electronically stored information.

ATI #30442.1

- 6 -

13.    Nothing herein shall prevent disclosure beyond the terms of this Order if each party or nonparty designating the information as "Confidential" or "Attorneys' Eyes Only" consents to such disclosure or, if the Court, after notice to all affected parties, orders such disclosures. Nor shall anything herein prevent any counsel of record from utilizing Classified Information in the examination or cross-examination of any person who is indicated on the document as being an author, source or recipient of the "Confidential" or "Attorneys' Eyes Only" information, irrespective of which party produced such information.

14.    A party shall not be obligated to challenge the propriety of a designation as "Confidential" or "Attorneys' Eyes Only" at the time made, and a failure to do so shall not preclude a subsequent challenge thereto. In the event that any party to this litigation disagrees at any stage of these proceedings with the designation by the designating party of any information as "Confidential" or "Attorneys' Eyes Only", or the designation of any person as a Qualified Person, the parties shall first try to resolve such dispute in good faith on an informal basis, such as by producing redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who has designated the document or information as "Confidential" or "Attorneys' Eyes Only". The designating party shall be required to move the Court for an order preserving the designated status of such information within

ATL/430942.1                              - 7 -

fourteen (14) days of receipt of the written objection, and failure to do so shall constitute a termination of the restricted status of such item.

15.    The parties may, by stipulation, provide for exceptions to this order and any party may seek an order of this Court modifying this Protective Order.

16.    Nothing shall be designated "Attorneys' Eyes Only" except information of the most sensitive nature, including, but not limited to proprietary and confidential trade secrets and business information, which if disclosed to persons of expertise in the area would reveal significant technical or business advantages of the producing or designating party, and which includes as a major portion subject matter which is believed to be unknown to the opposing party or parties, or any of the employees or competitors of the corporate parties.

17.    Nothing shall be regarded as Classified Information if it is information that either:

      (a)    is in the public domain at the time of disclosure, as evidenced by a written document;

      (b)    becomes part of the public domain through no fault of the other party, as evidenced by a written document;

      (c)    the receiving party can show by written document that the information was in its rightful and lawful possession at the time of disclosure; or

      (d)    the receiving party lawfully receives such information at a later date from a third party without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

ATL#430942.1

- 8 -

18.    In the event a party wishes to use any Classified Information in any affidavits, briefs, memoranda of law, or other papers filed in Court in this litigation, such "Confidential" or "Attorneys' Eyes Only" information used therein shall be filed under seal with the Court.

19.    The Clerk of this Court is directed to maintain under seal all documents and transcripts of deposition testimony and answers to interrogatories, admissions and other pleadings filed under seal with the Court in this litigation which have been designated, in whole or in part, as Classified Information pursuant to this Order.

20.    Unless otherwise agreed to in writing by the parties or ordered by the Court, all proceedings involving or relating to Classified Information shall be subject to the provisions of this Order.

21.    Within one hundred twenty (120) days after conclusion of this litigation and any appeal thereof, any Classified Information and all documents or reproductions containing or otherwise reflecting Classified Information that is in the possession of any Qualified Person defined in Paragraphs 3(a) through (d) shall be returned to the producing party or shall be destroyed (or made inaccessible to the extent reasonably possible) and shall be certified as such by receiving counsel, except as this Court may otherwise order or to the extent such Classified Information was used as evidence at trial.  As far as the provisions of any

ATL#\_.......    - 9 -

protective orders ente_ d in this action restrict the communic___on and use of the documents produced thereunder, such orders shall continue to be binding after the conclusion of this litigation, except (a) that there shall be no restriction on documents that are used as exhibits in Court unless such exhibits were filed under seal, and (b) that a party may seek the written permission of the producing party or order of the Court with respect to dissolution or modification of such protective orders.

22.    This Order shall not bar any attorney herein in the course of rendering advice to his client with respect to this litigation from conveying to any party client his evaluation in a general way of Classified Information produced or exchanged herein; provided, however that in rendering such advice and otherwise communicating with his client, the attorney shall not disclose the specific contents of any "Confidential" or "Attorneys' Eyes Only" information produced by another party or non-party herein, which disclosure would be contrary to the terms of this Protective Order.

23.    Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of any such person to observe the terms of this Protective Order.

ATL#30932.1                              - 10 -

24.    Privilege matters arising under Rule 26(b)(5)(B) all be addressed in

the Court's Scheduling Order pursuant to Rule 16(b).

Consented to by the parties through their respective undersigned counsel,

this 5th day of February, 2006.


/s/ James H. Cox                                    /s/ Carl G. Roberts
James H. Cox                                        Carl G. Roberts
Georgia Bar No. 192425                              Pennsylvania Bar No. 19367
Joseph F. Hession                                   Ballard Spahr Andrews & Ingersoll, LLP
Georgia Bar No. 349605                              51st Floor
Philip S. Bubb                                      1735 Market Street
Georgia Bar No. 092069                              Philadelphia, Pennsylvania 19103
CARLTON FIELDS, P.A.                                Phone: (215) 864-8120
One Atlantic Center                                 Fax:    (215) 864-9780
1201 West Peachtree Street                          *Attorney for Defendant*
Suite 3000
Atlanta, Georgia 30309
Phone: (404) 815-3400
Fax:    (404) 815-3415
*Attorney for Plaintiff*


BY THE COURT:

Honorable Beverly B. Martin, USDJ

Signed: February 5, 2007

ATL#30012.1

**EXHIBIT "C"**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE INSURANCE HOUSE, INC.,                    :
a Georgia corporation                          :       1:08-mc-00094-SLR
                                               :
                  v.                           :       (underlying case:
                                               :       Northern District of Georgia
                                               :       No. 1:07-cv-0286-BBM)
INSURANCE DATA PROCESSING, INC.,               :
A Pennsylvania corporation                     :

**AFFIDAVIT OF ADRIENNE M. LOGAN**

Adrienne M. Logan deposes and states as follows:

1.      I am a Senior Legal Assistant for the ACE companies' in-house Legal
Department ("Ace Legal"). More specifically, I work for the litigation attorneys in ACE
Legal. Ace American Insurance Company ("ACE American") is one of the ACE
companies ("ACE").

2.      My business address is 436 Walnut Street, WA04K, Philadelphia, PA
19106.

3.      ACE American has designated service of process agents in each of the 50
states, including the State of Delaware.

4.      On or about March 31, 2008, Douglas A. Stuart, Esquire, an in-house
attorney assigned to ACE Legal's Corporate Secretary Group, forwarded to me a
subpoena issued by the United States District Court for the District of Delaware and
directed to "ACE American Insurance Company (ACE INA)" ("Subpoena").

5.      The Subpoena was received by Ms. Lucienne Hardy who works for ACE
in its IT department in Delaware. Ms. Hardy, who has no connection to ACE Legal and
who is not authorized to receive legal process on behalf of Ace American or any other

Ace company mistakenly forwarded the Subpoena to Mr. Andrew Hopp, another in-house attorney assigned to the Corporate Secretary Group.

6.      Neither Mr. Stuart nor Mr. Hopp has any familiarity with or responsibility for handling third-party subpoenas served on ACE companies.  It is ACE Legal's in-house litigation attorneys in Philadelphia who are responsible for handling third-party subpoenas.

7.      Since the Subpoena was not served on Ace American's authorized registered agent in Delaware, it did not come to the attention of the in-house litigation group until it was forwarded to me by Mr. Stuart, after which I initiated a search for any documents responsive to the Subpoena.

8.      On April 15, 2008, I called Joseph Hession, Esquire, counsel for Insurance House, Inc., who caused the Subpoena to be issued.  As he was not available, I left a voicemail for him and requested an extension of time in which to respond to the Subpoena.

9.      By April 17, 2008, I received a call from Ms. Abbe Howard, reportedly Mr. Hession's paralegal, in response to my voice mail to Mr. Hession.  I advised Ms. Howard that although ACE had begun searching for any documents responsive to the Subpoena, it was not known whether ACE had any documents in its possession responsive to the Subpoena.  I therefore requested an extension of time to prepare ACE's response to the Subpoena but advised Ms. Howard that I did not know what that response would be.  Ms. Howard agreed to an extension of time until April 24, 2008.  She did not state that ACE American was waiving any potential objections, and I did not make any such statement.

2

10.     On April 18, 2008, I faxed and mailed a letter to Mr. Hession confirming my telephone conversation with Ms. Howard and the agreement for extension of time. A copy of that letter is attached as Exhibit "C" to Insurance House's Motion to Compel. The letter specifically stated that ACE does not waive any objections and expressly reserves the right to raise any applicable objections to the Subpoena. *See id.* I have not received any response to my letter.

11.     This affidavit is being submitted for the narrow purpose of responding to Insurance House's argument that Ace American has somehow waived its objections to the Subpoena. My submission of this affidavit is without waiver of the attorney-client privilege, the work product doctrine, or similar protections.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Adrienne M. Logan

3

**EXHIBIT "D"**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE INSURANCE HOUSE, INC.,          :
a Georgia corporation               :    1:08-mc-00094-SLR
                                    :
        v.                          :    (underlying case:
                                    :    Northern District of Georgia
                                    :    No. 1:07-cv-0286-BBM)
INSURANCE DATA PROCESSING, INC.,    :
A Pennsylvania corporation          :

## AFFIDAVIT OF DOUGLAS A. STUART, ESQUIRE

Douglas A. Stuart, Esquire deposes and states as follows:

1.      I am an Assistant General Counsel for ACE American Insurance Company ("ACE American").

2.      My business address is 436 Walnut Street, Philadelphia, PA 19106.

3.      I am an in-house attorney within ACE American Insurance Company's Legal Department, and I am assigned to its Corporate Secretary Group.  The Corporate Secretary Group is mainly responsible for matters pertaining to corporate governance, board actions, inter-company transactions, and certain commercial transactions.  My own responsibilities pertain to commercial transactions, and the contracts and other documents related thereto.

4.      Generally, neither I nor other attorneys in the Corporate Secretary Group handle litigation or responses to third-party subpoenas.  This is a responsibility of ACE American's in-house litigation attorneys.

5.      Sometime at the end of March of 2008, Andrew Hopp, Esquire, another attorney in the Corporate Secretary Group, handed me a subpoena purportedly issued by the United States District Court for the District of Delaware and directed to "ACE

American Insurance Company (ACE INA)" (the "Subpoena").    He had received the Subpoena from Ms. Lucienne Hardy, who works in the IT (information technology) group of the ACE companies in Wilmington, Delaware.

6.    On or about March 31, 2008, I called Joseph F. Hession, Esquire, the attorney for Insurance House, Inc. and the issuing officer of the Subpoena.    I left a message on his voicemail.    In my message, I explained that I was an in-house attorney for the ACE companies, that the response date listed in his Subpoena was approaching, and that I wanted to talk to someone about it.    Mr. Hession returned my phone call later that same day and left a message on my voicemail.

7.    On or about April 1, 2008, I spoke with Mr. Hession over the phone.    I advised Mr. Hession that I had just received the Subpoena, that I was not sure who would be handling the Subpoena, and that ACE American needed time to assign the matter to the appropriate person and for them to formulate a response.    I further advised Mr. Hession that ACE American could not respond to the Subpoena by the deadline stated therein, and I asked Mr. Hession for an extension of time to respond.    Mr. Hession responded that he did not oppose my request for extension of time.    He also did not state that ACE American was waiving potential objections.    Mr. Hession and I did not discuss a specific date for ACE American's response.    I asked Mr. Hession whether he wanted me to confirm our agreement for an extension of time in writing, and he responded that it would not be necessary.    I also asked Mr. Hession whether he was up against any immediate discovery or trial deadlines in his case and he responded that he was not.

8.     At about the time of my conversation with Mr. Hession, I referred the Subpoena to Ms. Adrienne Logan, who is a paralegal for ACE American's in-house litigation attorneys.

9.     This affidavit is being submitted for the narrow purpose of responding to Insurance House's argument that ACE American has somehow waived its objections to the Subpoena.  My submission of this affidavit is without waiver of the attorney-client privilege, the work product doctrine, or similar protections.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Douglas A. Stuart

**EXHIBIT "E"**



**ace ina**

ACE INA
ACE Corporate Litigation
Routing WA04K
436 Walnut St.
Philadelphia, PA 19106

215-640-2921 *tel*
215-640-4070 *fax*

adrienne.logan@ace-ina.com
www.ace-ina.com

**Adrienne M. Logan**
*Senior Legal Assistant*

April 18, 2008

Joseph F. Hession, Esq.
Carlton Fields, P.A.
1201 W. Peachtree Street N.W.
Atlanta, GA 30309

**VIA FAX TO: 404. 815. 3415  AND HARD COPY VIA FIRST CLASS USPS MAIL**

Re:    The Insurance House, Inc. v. Insurance Data Processing   ("IDP")
       Subpoena served upon ACE American Insurance Company ("ACE") on March 20, 2008

Dear Mr. Hession:

This letter will confirm my telephone conversation yesterday with your paralegal, Abbe Howard, during which she expressed to me that you have agreed to grant ACE an extension of time until April 24, 2008, in which to respond to the above-captioned subpoena.

Please be advised that ACE does not waive any objections and expressly reserves the right to raise any applicable objections as to attorney-client privilege, work product privileges, reasonableness, over breadth, burdensomeness or because the documents requested are of a confidential nature or contain proprietary business records, or to object for any other reason allowed under the applicable rules of procedure.

If you have any questions, please feel free to contact me.

Very truly yours,

Adrienne M. Logan

/AML

cc:    Saverio M. Rocca, Esq.

**EXHIBIT "F"**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE INSURANCE HOUSE, INC.,

        Plaintiff,

        v.

INSURANCE DATA PROCESSING,
INC.,

        Defendant.

CIVIL ACTION FILE

NO. 1:07-CV-0286-BBM

## O R D E R

This matter is before the court on Plaintiff The Insurance House, Inc.'s

("Insurance House") Motion to Compel Documents and Testimony Regarding the

Identification of Defendant's Customers [Doc. No. 51], and Defendant Insurance

Data Processing, Inc.'s ("IDP") Motion for a Protective Order Barring Plaintiff from

Seeking Any Discovery from Defendant's Customers and Potential Customers [Doc.

No. 54].

## I.   Factual and Procedural Background

This case involves a contract dispute between Insurance House and IDP.

Insurance House, an insurance agency, contracted with IDP for a software system

that would, simply stated, allow it to access certain information and use it to provide

insurance quotes and services to its customers. The software was to be tailored by

IDP to the specific needs of Insurance House. IDP made various representations

about its ability to customize advanced software for Insurance House, and to do so in a timely fashion. However, IDP was unable to meet the terms of the contract, leading to this lawsuit, in which Insurance House has sued IDP for breach of contract, fraud, and misappropriation of Insurance House's intellectual property.

During discovery, which is set to end on February 29, 2008, a dispute arose between the parties. IDP produced over 400,000 documents in response to Insurance House's requests, but redacted portions of approximately 100,000 of them to protect information relating to its customers' names, confidential business information, and material privileged under the attorney-client privilege. Insurance House filed the instant Motion to Compel, seeking access to IDP's customers' names and requesting unredacted documents. IDP opposes the Motion to Compel. It also seeks a protective order to prevent Insurance House from obtaining its customer names and from taking discovery from its customers. The court held a hearing on February 11, 2008.

## II.    <u>Analysis</u>

"Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court." <u>Joyner v. Rex Corp.</u>, No. 3:06-cv-397-J-33MCR, 2007 WL 1099106, at *1 (M.D. Fla. Apr. 10, 2007); <u>see</u> <u>Commercial Union Ins. Co. v. Westrope</u>, 730 F.2d 729, 731 (11th Cir. 1984). Generally, the benefit to the requesting

-2-

party is balanced against the burden on the producing party. In this case, the court is aware that Insurance House has already sent 31 subpoenas to various IDP customers and other businesses that expressed an interest in IDP's product. According to Insurance House, most of those entities complied with the subpoenas and sent Insurance House the documents it requested. Insurance House told the court that, because of this success in reaching IDP's customers, it considers the portion of its Motion seeking a customer list to be moot.[1] For its part, IDP agreed that it would supply Insurance House with the names of its remaining customers, and the marketing materials it provided to them.

At the hearing, Insurance House identified its real concern to be over the documents produced by IDP during discovery. IDP redacted approximately one out of every four pages that it sent to Insurance House. According to IDP, these redactions were for the purpose of concealing its customer names, any confidential business information of customers, and material that would fall under the attorney-client privilege. Insurance House contends that the redactions are excessive.

---

[1] The first sentence of Insurance House's Motion to Compel states that "it is crucial that [IDP] be required to disclose the identity of its customers so that [Insurance House] can obtain discovery therefrom that is directly relevant and essential to support" its claims. (Pl.'s Mem. of Law in Supp. of its Mot. to Compel Documents and Testimony Regarding the Identification of Def.'s Customers 1.) However, at the hearing, Insurance House argued to the court that the names of IDP's customers is not the information it primarily seeks. It characterized the dispute to be mainly about the allegedly extensive redactions IDP made to documents already turned over during discovery.

However, when pressed to identify what information it believed it was entitled to that had been unnecessarily redacted, Insurance House could not do so.

Insurance House's reasons for seeking this discovery do not demonstrate to the court why unredacted documents are necessary. According to Insurance House, discovery from IDP's customers is necessary to determine whether: (1) those customers had technical problems with the software such that IDP was aware that it did not work prior to entering into the contract; (2) IDP's representations to Insurance House regarding its past successes with the software were false; (3) IDP's attempts to build or modify its program for other customers contributed to its failure to meet its contractual obligations to Insurance House; (4) licensing fees that IDP received from licensing the software would entitle Insurance House to royalties under the contract; (5) demonstrations or licenses to third parties contained Insurance House's confidential information or IP in violation of the contract. The information relevant to item (4), licensing fees paid, should not be controversial, as the contract between the parties calls for what is essentially a late fee in the amount of a percentage of IDP's gross sales. (See Pl.'s Mot. to Compel Documents and Testimony Regarding the Identification of Def.'s Customers Exs. 1-14, at 13.) That information can surely be obtained from non-confidential sources. As for the other categories, IDP states that it has already produced documents responsive to those

-4-

areas of inquiry. (See Def.'s Br. in Opp'n to Pl.'s Mot. to Compel Documents and Testimony Regarding the Identification of Def.'s Customers 17.)

Insurance House acknowledges that it is not entitled to the confidential business information of IDP or its customers. At the same time, it argues that the marketing materials that IDP is willing to provide are insufficient. Insurance House appears to believe there is some other category of information that is neither confidential business information nor marketing material. The court repeatedly tried to elicit a description of this other category from Insurance House, but counsel persisted in defining it only in the negative: information that is not confidential business information, but yet is more substantive than marketing material. Apparently, Insurance House simply believes that IDP did not do an honest job in redacting its documents, and removed more than just customer names and confidential business information. However, there is no evidence in support of that theory.[2]

---

[2] The parties and the court spent much time discussing the redactions on a single document, an email from Gary Gilbert to Neil Kaufman, Doug Walters, Janet Somogyl, and Bernie Kratz, dated June 14, 2006. (See Pl.'s Mot. to Compel Documents and Testimony Regarding the Identification of Def.'s Customers Exs. 1-14, at 2.) Much of the focus was devoted to a redaction that appears in the first line of the fourth paragraph, preceding the word "date." The court asked IDP what the redaction was, and IDP stated that it was the initials of a customer. As the email refers to Insurance House as "IH" later in the paragraph, the court finds this explanation to be credible. The court does not have any reason to believe that the redactions are other than confidential business information and privileged material.

IDP spent a significant amount of time and money redacting the discovery documents it sent to Insurance House. Producing the same documents in unredacted form, or re-doing the redactions, would place a large financial burden on IDP.[3] Moreover, as discussed above, it is not clear what the gains to Insurance House would be. IDP is entitled to protect its confidential business information and its attorney-client privilege, and no doubt would do so again if forced to re-produce over 100,000 pages of documents, resulting in wasteful duplicated effort. Thus, in balancing the burden on the producing party against the benefit to the requesting party, the court believes the burden falls more heavily on IDP than the purported benefit to Insurance House can justify.

The court will not require IDP to unredact or re-redact all of the documents it has produced. The court will, however, direct IDP to follow through with the offer it made during the hearing, namely, to provide Insurance House with the names of remaining customers (numbering less than 10, possibly around 6) that Insurance House has not already identified. Insurance House, in turn, is directed to coordinate its contact with these customers through counsel for IDP.

IDP has sought a protective order covering much of the same ground as Insurance House's Motion to Compel.

---

[3] IDP estimates that it would cost over $20,000 to produce the documents without redactions.

-6-

> A party seeking a protective order must establish:  (1) that the information sought to be protected is 'confidential', and (2) that its disclosure might be harmful.  The burden then shifts to the party seeking the information to show:  (3) that the information sought is relevant and necessary at this point in the litigation.

Duracell Inc. v. SW Consultants, Inc., 126 F.R.D. 576, 578 (N.D. Ga. 1989) (Hall, J.).

IDP has established that its confidential business information is indeed confidential and that its disclosure might be harmful.  Insurance House has not convinced the court that the information sought is relevant and necessary.  However, because the information that IDP has supplied in document form has been thoroughly redacted, the court does not see the need for a protective order to cover the documents at this time.

As to IDP's customers, the court does require IDP to disclose them, and the result will likely be subpoenas to those customers.  IDP has argued that disclosing the confidential business information of its customers could subject it to lawsuits by those customers.[4]  The confidentiality agreements that IDP has with its customers are held in favor of the customers.  If those customers choose to waive their own confidentiality and release the information requested in the subpoenas, there will

---

[4] Because IDP agreed at the hearing to provide additional customer names, the court does not understand IDP to argue that disclosing the customer *names* themselves violates its confidentiality agreements.

-7-

be no harm to IDP.  Therefore, the court does not feel a protective order is required

in this area either.

**III.    <u>Conclusion</u>**

For the foregoing reasons, Plaintiff Insurance House's Motion to Compel

Documents and Testimony Regarding the Identification of Defendant's Customers

[Doc. No. 51] is DENIED.  Defendant IDP's Motion for a Protective Order Barring

Plaintiff from Seeking Any Discovery from Defendant's Customers and Potential

Customers [Doc. No. 54] is DENIED.  Plaintiff's Request for Oral Argument [Doc.

No. 62] and Defendant's Request for Consolidated Oral Hearing [Doc. No. 65] are

GRANTED.

IT IS SO ORDERED, this 13th day of February, 2008.


s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, Mary E. Augustine, hereby certify that on the 3rd day of June, 2008, I caused a copy of

the **Third Party Ace American Insurance Company's Opposition to Plaintiff's Motion to**

**Compel Documents** to be served upon the parties listed below in the manner indicated.

### *VIA* U.S. MAIL

Thomas G. Macauley
*Zuckerman Spaeder LLP*
919 Market Street, Suite 1705
P.O. Box 1028
Wilmington, DE 19899

James J. Wolfson
Joseph S. Hession
*Carlton Fields, P.A.*
One Atlantic Center
1201 West Peachtree Street
Suite 300
Atlanta, GA 30309

Katie Arrington D'Emilio
*Ballard, Spahr, Andrews & Ingersoll, LLP*
919 North Market Street
12th Floor
Wilmington, DE 19801-3034

Carl G. Roberts
*Ballard, Spahr, Andrews & Ingersoll, LLP*
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

Paul B. Bech
*Bazelon Less & Feldman, P.C.*
1515 Market Street, Suite 700
Philadelphia, PA 19102-1907

Mary E. Augustine (No. 4477)